RECEIVED

AUG 2 3 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

ACTIVE ZONES OF AMERICA, LLC

VERSUS

SDV (USA) INC.,
AND XYZ INSURANCE COMPANY

CIVIL ACTION NO. 05-1584

JUDGE DOHERTY

MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING

Pending before this Court are the following: (1) Motion to Strike Exhibit [**Doc. 47**], filed by

SDV (USA) (hereinafter referred to as "SDV"); and (2) Motion for Reconsideration of Memorandum

Ruling on Motion to Dismiss [**Doc. 48**], filed by SDV. The Motion to Strike Exhibit is unopposed,

while the Motion for Reconsideration is opposed. For the reasons that follow, this Court **GRANTS**

the Motion for Reconsideration of Memorandum Ruling on Motion to Dismiss [**Doc. 48**], and

**DENIES** as **MOOT** the Motion Strike Exhibit [**Doc. 47**].

## BACKGROUND

The pleadings and memoranda filed by the parties reveal the following uncontested facts:

On December 22, 2003, Active Zones, a Louisiana limited liability company, executed a U.S.

Customs Power of Attorney agreement in favor of SDV, a foreign corporation whose principal place

of business is in New York state. According to the Power of Attorney agreement, Active Zones is

identified as "grantor," authorizing SDV, the "grantee," to "perform certain acts in trustee capacity"

on behalf of Active Zones. Specifically, Active Zones authorized and appointed SDV to, among

other things:

> Make, endorse, sign, declare, or swear to any entry, withdrawal, declaration,
> certificate, bill of lading, or other documents required by law or regulation in

connection with the importation, exportation, transportation, of any merchandise in or through the customs territory, shipped or consigned by or to said grantor [Active Zones].

(*Motion to Dismiss* [Doc. 11], Exhibit A, pp. 4-5).

The December 22, 2003 Power of Attorney between Active Zones and SDV indicates the Power of Attorney is "to remain in full force and effect until revocation in writing is duly given to and received by Grantee [SDV]."  Moreover, the Power of Attorney includes the following provision:

> ALL SERVICES ARE SUBJECT TO AND GOVERNED BY THE NATIONAL CUSTOMS BROKERS & FORWARDERS ASSOCIATION OF AMERICA, INC., TERMS AND CONDITIONS OF SERVICE.  PLEASE CONSULT THE COPY DELIVERED TO YOU WITH THIS DOCUMENT OR REQUEST AN ADDITIONAL COPY.

*Id.* at 5 (emphasis in original).

The National Customs Brokers & Forwarders Association of America, Inc., Terms and Conditions of Service (hereafter referred to as "Terms and Conditions of Service") is a form document that defines "Company" as "SDV (USA), Inc., it [sic] subsidiaries, related companies, agents and/or official representatives."  The Terms and Conditions of Service do not specifically identify Active Zones; however, "customer" is defined as "the person for which the Company is rendering service, as well as its agents and / or representatives, including but not limited to shippers, importers, exporters . . . ."  Further, the Terms and Conditions of Service contain the following paragraph:

> **21. Governing Law; Consent to Jurisdiction and Venue**.  These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of New York without giving consideration to principals of conflict of law. Customer and Company

-2-

(a)    Irrevocably consent to the jurisdiction of the United States District
        Court and the State courts of New York;

(b)    agree that any action relating to the services performed by the
        Company, [sic] shall only be brought in said courts;

(c)    consent to the exercise of *in personam* jurisdiction by said courts over
        it, [sic] and

(d)    further agree that any action to enforce a judgment may be instituted
        in any jurisdiction.

*Id.* at p 8.

On February 9, 2004, Nordana Line AS (Nordana), which is not a party in this matter, issued
a Bill of Lading for Combined Transport or Port to Port Shipment (the "bill of lading") for the
shipment of various cargo items from Houston, Texas to Douala, Cameroon. In the bill of lading,
Active Zones is designated as a "shipper/exporter." "AZA LTD." of Douala, Cameroon, is identified
as a "consignee," and SDV is identified as a "forwarding agent." According to the bill of lading, the
items being shipped were "51 piece(s) Tank Containers, Freight Prepaid." (*Motion for
Reconsideration* [Doc. 42], pp. 5-6).

On January 21, 2005, plaintiff, Active Zones of America, L.L.C. (Active Zones) filed a
petition [Doc. 1] in Louisiana state court for damages allegedly caused by SDV's breach of contract
with Active Zones. In its petition, Active Zones asserted it entered into a February 9, 2004
"contract" with SDV for the shipment of: (1) 256 empty propane tanks of various dimensions, (2)
2 Bobtail trucks (propane delivery trucks), (3) 1 propane trailer, (4) some piping, and (5) 1 box of
accessories. However, Active Zones alleges SDV incorrectly described the cargo as "51 (tank
containers) without any mention of trucks and trailer." As a result of the alleged incorrect cargo
description, Active Zones claimed the cargo could not clear customs upon arrival in Cameroon.
Active Zones alleged it contacted SDV to correct the bill of lading so Active Zones could avoid
penalties, fees, and costs. Active Zones further claimed SDV refused to correct the cargo

description, causing Active Zones to incur $200,000.00 in penalties in Cameroon.  (*Plaintiff's Petition*, ¶¶ 2-9).

On September 6, 2005, approximately one week after the landfall of Hurricane Katrina, SDV removed this matter to this Court.[1]  [Doc. 3]   On September 21, 2005, SDV filed a Motion to Dismiss, or Alternatively to Transfer Case [Doc. 11], in which SDV noted Active Zones alleged SDV and Active Zones entered a February 9, 2004 contract; however, SDV also, argued the "terms and conditions of this contract" contained a "forum selection clause" in which "the parties had agreed in advance that any actions relating to the performance of SDV's obligations should be filed in New York."  Accordingly, SDV averred dismissal was proper under Fed. R. Civ. Pro. 12(b)(3) and 21 U.S.C. § 1406(a).[2]  Alternatively, SDV argued this Court should transfer this action to the United States District Court for the Southern District of Texas for the convenience of the parties and witnesses or in the interest of justice, pursuant to 21 U.S.C. § 1404(a).[3]

Efforts were made by this Court and by counsel for defendants to find counsel for plaintiff, whose New Orleans practice and personal dwelling were destroyed. [Docs. 20, 21].  On January 3, 2006, counsel for plaintiffs contacted the Court to advise he relocated to Baton Rouge, Louisiana, where he was attempting to reestablish his practice. [Doc. 22].

On January 3, 2006, this Court established a new deadline of March 1, 2006, for the filing

---

[1]  According to SDV, plaintiff filed the original petition in state court on January 21, 2005, but "did not file its citation (summons) until August 5, 2005," which is less than thirty days from the date SDV removed this matter to this Court. [Doc. 4]

[2]  21 U.S.C. § 1406(a) provides that the district court of a district "in which is filed a case laying venue in the wrong division or district" shall "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[3]  21 U.S.C. § 1404(a) provides that, "for the convenience of parties and witnesses, in the interest of justice," a district court "may transfer any civil action to any other district or division where it might have been brought."

of any opposition to the Motion to Dismiss, which was set on this Court's March 21, 2006 Motion Day. [Doc. 23]. Subsequently, on March 10, 2007, after the deadline to file opposition passed without the filing of any opposition, this Court issued an Order granting the Motion to Dismiss and cancelling the March 21, 2006 setting of the Motion to Dismiss. [Doc. 30].

However, seven days later, on March 17, 2006, Active Zones filed an opposition [Doc. 32] to SDV's Motion to Dismiss, arguing it was unaware of the "forum selection clause" and that this matter should not be litigated outside of Louisiana "because litigating elsewhere would create upon Active Zones a significant financial hardship as Active Zones attorney's offices and files are located in Baton Rouge, Louisiana." Thereafter, on April 3, 2006 Active Zones filed a Motion for Reconsideration of this Court's March 14, 2007 Order granting the Motion to Dismiss or Alternatively to Transfer [Doc. 35] arguing the upheaval from Hurricane Katrina.

On June 20, 2006, this Court granted the Motion for Reconsideration based upon Hurricane Katrina, and vacated its March 10, 2006 Order granting the SDV Motion to Dismiss or Alternatively to Transfer [Doc. 39] and invited additional briefing and argument. Thereafter, after receipt of the additional briefing, on July 28, 2006, this Court denied the Motion to Dismiss or Alternatively to Transfer [Doc. 41]. In the July 28, 2006 Memorandum Ruling, this Court noted SDV had argued a *February 9, 2004 contract for services* contained a mandatory forum selection clause, but submitted a *December 22, 2003 Power of Attorney* between Active Zones and SDV *in support of that argument.* Although the December 22, 2003 Power of Attorney did contain the alleged mandatory forum selection clause, it was not the February 9, 2004 contract argued. This Court thus observed, "the Power of Attorney on its face and by its date does not support defendant's argument, and the argued contract was not provided" [Doc. 41] and denied the Motion to Dismiss.

Thereafter, SDV filed a Motion for Leave to file a Motion for Reconsideration [Doc. 42], and plaintiff filed an Opposition to the Motion for Leave to file a Motion for Reconsideration. [Doc. 43]. SDV subsequently filed a Motion for Leave to File Motion to Strike Exhibit and Memorandum in Support [Doc. 44], seeking portions of Active Zones's exhibits to its opposition be stricken.

In light of the ever shifting assertions as to the applicable contract and inference as to additional parties and signatories, this Court ordered, on February 1, 2007, counsel on behalf of Active Zones and SDV to attend a status conference. At that conference both agreed Active Zones and SDV are the only parties to this suit; however, both agreed there had been confusion as to the specific relevant agreement argued as between Active Zones and SDV. This Court therefore granted the Motions for Leave to File [Docs. 42, 44], subject to additional briefing ordered by the Court designed to clarify the contracts and issues between the parties.[4] [Doc. 46]. Thereafter, SDV filed a Motion for Leave to File Supplemental Memorandum in Support of Motions to Dismiss and for Reconsideration [Doc. 49]. SDV again attached supporting affidavits with copies of the December 22, 2003 Power of Attorney and a copy of a February 9, 2004 Nordana Bill of Lading. Thereafter, Active Zones filed a Supplemental Memorandum in Opposition to SDV's Motion for Reconsideration. [Doc. 50]. Active Zones attached what appears to be photocopies of checks to SDV and what appears to be a copy of a February 11, 2004 document indicating Active Zones was

---

[4] At the status conference, the Court advised:

The Court anticipates and expects allegations and arguments to be accompanied by exhibits consisting of all documentary evidence relevant to the existence, or lack thereof, of the contract or contracts at issue. If the parties do not attach supplemental exhibits specifically identifying the applicable contract they claim applies, then they are cautioned the Court will assume they intend to rely solely on the allegations that were previously submitted to the Court.

[Doc. 46].

a shipper, AZA LTD. was a "consignee" and SDV was a "forwarding agent." There are no supporting affidavits attached with Active Zones's Supplemental Memorandum. These matters are now before the Court.

## LEGAL STANDARD

**A.      Standard of Review**

    **1.      Motion for Reconsideration**

        **a.      Procedural Law**

The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). In *Lavespere v. Niagara Machine & Tool Works, Inc.* the Fifth Circuit reasoned motions for "reconsideration" may be treated as either a Rule 59(e) or a Rule 60(b) motion:

> The Federal Rules do not recognize a "motion for reconsideration" *in haec verba*. We have consistently stated, however, that a motion so denominated, provided that it challenges the prior judgment on the merits, will be treated as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b). Under which Rule the motion falls turns on the time at which the motion is served. **If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)**.

910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (emphasis added).

Rule 59(e) recognizes only three grounds on which to alter or amend reasons for judgment: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Schiller v. Physicians Resource Group, Inc.*, 342 F.3d 563, 566 (5th Cir.2003).

On the other hand, Rule 60(b) sets forth six reasons a court may relieve a party or a party's legal representative from a "final judgment, order, or proceeding:" (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. Fed R. Civ. P. 60(b).

The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005). While this rule is to be liberally construed to do substantial justice, a court should not lightly reopen a final judgment. *See, e.g., Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981).   Rule 60(b) relief will only be afforded in "unique circumstances." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356-357 (5th Cir. 1993)

SDV's Motion for Leave to File the Motion for Reconsideration was filed more than ten days after this Court's July 2006 Order.  This Court granted SDV leave to file its Motion for Reconsideration thereafter. Accordingly, the Motion for Reconsideration was filed more than ten days after the issuance of the Court's Order.  Consequently, pursuant to *Lavespere, supra*, SDV's motion for reconsideration shall be considered by this Court as a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure.   Although SDV's Motion for Reconsideration does not specify clauses (1) and (6) of Rule 60(b), these are the only two clauses

in Rule 60(b) that could pertain to SDV's arguments. Therefore, this Court considers SDV's arguments under Rules 60(b)(1) and 60(b)(6).

With respect to Rule 60(b)(1), the Fifth Circuit has held that it is not an abuse of discretion to deny relief when the proffered justification is the "inadvertent mistake" of counsel. *Edward H. Bohlin Co.*, 6 F.3d at 356-357. In fact, a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court. *Id.* "Gross carelessness, ignorance of the rules, or ignorance of the law" are insufficient bases for Rule 60(b)(1) relief. *Id.* at *357*. Further, the Fifth Circuit has stated that it would be an abuse of discretion for a district court to grant relief on the sole basis of counsel's carelessness with or misapprehension of the laws. *Id.* To the extent the "mistake" is one by the court, the Fifth Circuit has held that a plaintiff's claim of "mere legal error" does not warrant Rule 60(b)(1) relief. *McMillan v. Mbank Fort Worth, N.A.*, 4 F.3d 362, 367 (5th Cir. 1993). In such a situation, a plaintiff is to pursue an appeal. *Id.*

Rule 60(b)(6) authorizes relief for any reason other than those listed in clauses (b)(1) through (b)(5). *U.S. ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 397 F.3d 334, 337 (5th Cir. 2005). Relief, however, is appropriate only in an "extraordinary situation" or when "extraordinary circumstances are present." *Id.* (internal citations and quotation marks omitted).

### b.    Substantive Law

#### i.    Forum Selection Clauses

Under federal law, mandatory forum selection clauses are presumed valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Haynsworth v. The Corporation*, 121 F.3d 956, 962

(5th Cir. 1997). The Fifth Circuit recognizes a strong presumption in favor of the enforcement of forum selection clauses. *Haynesworth,* 121 F.3d at 962-63. Additionally, the dismissal of an action to remedy an incorrect choice of forum in derogation of a valid forum selection clause may be appropriate. *See, e.g., International Software Sys. Inc., v. Amplicon, Inc.,* 77 F.3d 112, 114-15 (5th Cir. 1996).

      However, the presumption of validity with respect to mandatory forum selection clauses can be surmounted by showing the forum-selection clause is "unreasonable." *M/S Bremen,* 407 U.S. at 10. Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Haynsworth,* 121 F.3d at 963. The party trying to invalidate a forum-selection clause bears a "heavy burden of proof." *M/S Bremen,* 407 U.S. at 17.

      Nevertheless, before determining whether a forum selection clause is mandatory and thus enforceable under the *M/S Bremen* line of cases, a court must determine whether it is presented with a mandatory forum selection clause or merely a permissive one. *Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127 (5th Cir. 1994). A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. *City of New Orleans v. Municipal Administrative Services,* Inc., 376 F.3d 501, 504 (5th Cir. 2004). For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. *Id.* (citing *Keaty v. Freeport*

*Indonesia, Inc.*, 503 F.2d 955 (5th Cir.1974)). It is important to distinguish between jurisdiction and venue when interpreting such clauses. *Id.* Although it is not necessary for such a clause to use the word "venue" or "forum," it must do more than establish that one forum will have jurisdiction. *Id.*

### ii.     Change of Venue

28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of 28 U.S.C. § 1404(a) is "to prevent the waste of time, energy and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citing *Continental Grain Co. v. Barge F.B.L.*, 364 U.S. 19 (1960)) (internal quotations omitted). The burden of proof in a motion to transfer is on the moving party. *Rodriquez v. Pan American Life Ins. Co.*, 311 F.2d 429, 434 (5th Cir.1962), *vacated on other grounds by, Pan-American Life Ins. Co. v. Rodriguez*, 376 U.S. 779 (1962).

In applying the provisions of § 1404(a), "the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re: Volkswagon AG*, 371 F.3d 201, 203 (5th Cir. 2004)(vacating and remanding a decision denying a motion to transfer venue where the distance from plaintiff's choice of forum and the proposed forum that was allegedly more convenient was 400 miles). Thereafter, "the determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Id.* The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial

of a case easy, expeditious and inexpensive. *Id.* The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.*

Additionally, the Supreme Court has clearly indicated that either a defendant or a plaintiff can move for change of venue under § 1404(a) and that the same treatment and consideration should be given to the motion for transfer regardless of who the movant of that motion may be. *In re: Volkswagon AG,* 371 F.3d at 204 (citing *Ferens v. John Deere Co.,* 494 U.S. 516, 530(1990)). Moreover, the plaintiff's choice of forum is "clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entertainment,* 337 F.3d 429, 434-35 (5th Cir. 2003). The convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a). *In re Volkswagen AG,* 337 F.3d at 206 (citing *In re Horseshoe,* 337 F.3d at 434 (finding that the "factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue")).

## DISCUSSION

### 1.   Motion for Reconsideration

As noted above, SDV's motion for reconsideration is considered as a motion for relief from judgment under Rule 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure. Based on a review of the submissions by SDV and Active Zones, this Court finds a sufficient mistake, namely the confusion as to the applicable agreement between SDV and Active Zones, warranting Rule 60(b)(1) relief. Active Zones and SDV have confirmed they are the only parties in this matter, which involves an alleged breach of contract. In the earlier pleadings before this Court, it appeared the

-12-

parties were disputing the Terms and Conditions of Service of a February 9, 2004 contract.[5]
However, Active Zones and SDV have since clarified the relevant agreements at issue and their
positions as to the relevant binding agreement between the parties.

*Relevant Agreement*

**A.     The December 22, 2003 Power of Attorney**

The *only* written agreement between Active Zones and SDV submitted to the Court is the
*December 22, 2003* Power of Attorney in which Active Zones authorized and appointed SDV to act
as Active Zone's agent to make any "entry, withdrawal, declaration, certificate, bill of lading" or
"other" documents "required by law or in connection with" the "importation, exportation,
transportation of any merchandise in or through the customs territory, shipped or consigned by or
to" Active Zones. (*Motion to Dismiss* [Doc. 11], Exhibit A, pp. 4-5). The December 22, 2003 Power
of Attorney between Active Zones and SDV indicates the Power of Attorney is "to remain in full
force and effect until revocation in writing is duly given to and received by Grantee [SDV]."
Moreover, the Power of Attorney incorporates the Terms and Conditions of Service, which contains
the alleged "forum selection clause" in Section 21 of the Terms and Conditions of Service.

---

[5] In SDV's memorandum in support of its motion to dismiss [Doc. 11], SDV appears to suggest
there was a February 9, 2004 contract between SDV and Active Zones:

> The Petition alleges that on or about February 9, 2004, AZD [Active Zones] entered into a
> contract with SDV for shipment of 256 empty propane tanks, 2 Bobtail trucks, and 1
> propane trailer and accessories to Cameroon, West Africa. The **Terms and Conditions of
> this contract, attached hereto as an exhibit** to the declaration of Eric Steinbock, contains
> the mandatory forum selection clause mentioned above.

(Memorandum in Support of Motion to Dismiss [Doc. 11-2], p. 3 (emphasis added). SDV's memorandum
in support of the motion to dismiss does not identify the date on which Active Zones entered into a contract
with SDV; however, the Power of Attorney contains a designated date of December 22, 2003, several months
*prior to* the suggested February 9, 2004 "contract" entered into by Active Zones and SDV.

SDV submitted the affidavit of Mr. Eric Steinbock, SDV's Vice President, who states this is the only agreement between Active Zones and SDV. (*Affidavit of Eric Steinbock*, pp. 1-2). Moreover, SDV also attached the affidavit of Ms. Gail Williams, SDV's "Quality/Operations Manager," who states that, in the freight forwarding and customs brokerage business, it is the "normal and customary course of dealing and usage" for a "freight forwarder/customs broker" to execute a "Power of Attorney with Terms and Conditions" that "then apply to all business dealings between the parties." Further, Ms. Williams indicates, "That customary course of dealings and usage was followed in SDV's business relationship with [Active Zones]," and, pursuant to the normal and customary course of dealing and usage in the industry, "it was understood by SDV and Active Zones that the December 22, 2003 Terms and Conditions of Service to the Customs Power of Attorney applied to the freight forwarding services provided to Active Zones by SDV in February 2004." (*Affidavit of Gail Williams*, pp. 1-2). Active Zones submits no affidavits, sworn testimony, or documentary evidence disputing this.

### B.    The February 9, 2004 Agreement

There is no written February 2004 agreement *between Active Zones and SDV*. Active Zones nonetheless argues there was a February 9, 2004 agreement between Active Zones and SDV for the shipment of: (1) 256 empty propane tanks of various dimensions, (2) 2 Bobtail trucks (propane delivery trucks), (3) 1 propane trailer, (4) some piping, and (5) 1 box of accessories. However, Active Zones alleges SDV incorrectly described the cargo as "51 (tank containers) without any mention of trucks and trailer." No such contract has been provided.

As noted above, there is no February 2004 agreement *between Active Zones and SDV*. There is, however, a *Nordana* Bill of Lading dated February 9, 2004. Nordana is not a party to this suit.

The February 9, 2004 Bill of Lading was not issued by SDV, and merely describes the shipment of various cargo items from Houston, Texas to Douala, Cameroon.  Pursuant to the Bill of Lading, Active Zones is designated as a "shipper/exporter," while "AZA LTD" of Douala, Cameroon, is identified as a "consignee," and SDV is identified as a "forwarding agent."  According to the Bill of Lading, the items being shipped were "51 piece(s) Tank Containers, Freight Prepaid." Additionally, Active Zones submitted what appears to be photocopies of checks made in favor of SDV in February 2004, as well as what appears to be a copy of a February 11, 2004 document indicating only that Active Zones was a "shipper/exporter," while "AZA LTD." was a "consignee," and SDV was a "forwarding agent."  Otherwise, Active Zones has submitted no documents purporting to be the February 9, 2004 agreement between Active Zones and SDV.  Additionally, Active Zones submitted no affidavits or other evidence to establish the documents submitted by Active Zones create any enforceable obligations upon Active Zones, AZA LTD., or SDV as argued by Active Zones.

<em>The Parties' Positions</em>

**A.    Active Zones and SDV Do Not Dispute Several Key Aspects**

Although it appears Active Zones and SDV are in dispute as to the relevant agreement between the parties and its import, it is noted Active Zones and SDV do not dispute several key aspects. According to Active Zones *and* SDV, there was an "agreement" between Active Zones and SDV whereby SDV was to act as a "shipping agent" on behalf of Active Zones. (*Plaintiff's Supplemental Memorandum* [Doc 50-1], pp. 1-2; *Defendant's Memorandum in Support of Motion to Dismiss* [Doc. 11-1], p. 2; *Defendant's Supplemental Memo.* [Doc. 51], p. 2). Moreover, Active Zones and SDV agree SDV's obligations under the "agreement" as a "shipping agent" on behalf of

-15-

Active Zones include SDV's obligation to prepare all necessary shipping documentation, including export documentation, enabling Active Zone's cargo to "clear customs."[6] (*Plaintiff's Supplemental Memorandum* [Doc. 50-1, p. 2; ], pp. 2-3; *Defendant's Memorandum in Support of Motion to Dismiss* [Doc. 11-1], p. 2; *Defendant's Motion for* Reconsideration [Doc. 48-2], p. 2; *Defendant's Supplemental Memorandum* [Doc. 52], pp. 1-2; *Power of Attorney*, p. 2; *Affidavit of Eric Steinbock*, pp. 1-2; *Affidavit of Gail Williams*, pp. 1-2).

Active Zones and SDV further agree the original petition in this matter was filed by Active Zones, alleging SDV failed to perform under the "agreement" between SDV and Active Zones. (*Plaint. Pet.* [Doc. 1], ¶ 8; *Defendant's Memorandum in Support of Motion to Dismiss* [Doc. 11-1], p. 1).   Active Zones therefore seeks damages as a result of SDV's alleged failure under the "agreement" to accurately complete a bill of lading required for Active Zones's cargo to "clear customs" at the Port of Douala in Cameroon, West Africa. (*Plaintiff's Petition*, ¶¶ 1-8; *Plaintiff's Supplemental Memorandum* [Doc. 50-1, p. 2; ], pp. 2-3).

## B.    The Argued Agreement Between the Parties

Active Zones maintains the controlling agreement between Active Zones and SDV was one existing on or about February 9, 2004, when Active Zones paid $110,710.80 to SDV to provide "an accurate description of cargo in a bill of lading" to enable "quick clearance" of the cargo at the Port of Douala. (*Plaintiff's Supplemental Memorandum* [Doc. 50-1, p. 2; ], pp. 2-3).  However, as noted above, Active Zones has submitted no February 9, 2004 contract or evidence of an oral agreement between Active Zones and SDV, nor has Active Zones presented any evidence by way of affidavit

---

[6] It is noted that, although the parties appear to dispute the date of the relevant agreement, the obligations described by Active Zones and SDV and those on which Active Zones and SDV agree are clearly expressed in the *December 22, 2003 Power of Attorney*, which, as noted elsewhere herein, is the *only* agreement between Active Zones and SDV with which this Court has been provided.

supporting a conclusion Active Zones and SDV entered into any such agreement in *February 2004.*

On the other hand, SDV argues there was no February 9, 2007 agreement between Active Zones and SDV. (*Defendant's Memorandum in Support of Motion for Reconsideration* [Doc. 48-2], p. 2). Rather, SDV explains the February 9, 2004 "agreement" referred to by Active Zones is in fact, a February 9, 2004 *Bill of Lading* between Active Zones and *Nordana*, which is not a party to this suit. *Id.* SDV maintains the only agreement between Active Zones and SDV is the December 22, 2003 Power of Attorney, which incorporates Terms and Conditions of Service that govern "the business dealings between the parties to this lawsuit." *Id.*

### Findings of the Court as to the Relevant Agreement Between the Parties

A review of the pleadings and submissions in this record reveals no February 9, 2004 agreement *between Active Zones and SDV.* The February 9, 2004 contract supplied is the Nordana Bill of Lading which merely designates Active Zones as a shipper, AZA LTD. as a consignee, and SDV as a forwarding agent; additionally, nothing in the Nordana Bill of Lading establishes SDV was a party to the Bill of Lading beyond SDV having been designated as a "forwarding agent." While the parties are in agreement as to SDV's obligations as an agent as created under the December 22, 2003 Power of Attorney, this Court can find no support in the submissions filed by Active Zones that the obligations owed by SDV to Active Zones arise from the February 9, 2004 Bill of Lading. Accordingly, this Court finds the documents submitted by Active Zones fail to establish Active Zones entered into a *February 9, 2004* agreement which created any affirmative obligation on the part of SDV. Rather, the February 9, 2004 Bill of Lading merely identifies SDV as a "forwarding agent."

On the other hand, the December 22, 2003 Power of Attorney, which, as noted above, is the

-17-

*only* contract between Active Zones and SDV that has been presented to this Court, clearly reveals Active Zones is a signatory to the agreement, unequivocally incorporates terms and conditions of the Terms and Conditions of Service which contains a "forum selection clause." There is no dispute between the parties that Active Zones executed the Power of Attorney, and the uncontroverted affidavit evidence of Ms. Williams and Mr. Steinbeck support a conclusion Active Zones executed the Power of Attorney incorporating the Terms and Conditions of Service which contains the "forum selection clause." Further, the unrefuted affidavits establish the Terms and Conditions of Service were provided to Active Zones upon execution of the Power of Attorney, and Active Zones did not object to the Terms and Conditions of Service. Accordingly, this Court finds the parties entered into a Power of Attorney, pursuant to which Active Zones granted SDV its Power of Attorney to act as a "shipping agent" on behalf of Active Zones. A review of the Power of Attorney reveals language establishing SDV's obligations to act as an agent on behalf of Active Zones, and SDV's obligations described in the Power of Attorney are consistent with those on which the parties have agreed.

Further, the unrefuted affidavit evidence establishes the normal and customary course of dealing and usage for a freight forwarder/customs broker is to execute a Power of Attorney with Terms and Conditions of Service that then apply to all business dealings between the parties. A review of the Power of Attorney provides the Power of Attorney is "to remain in full force and effect until revocation in writing is duly given to and received by [SDV]." There is no argument nor evidence before this Court indicating the Power of Attorney was revoked by Active Zones at any time prior to the February 9, 2004 Nordana Bill of Lading in which SDV was designated as Active Zones's "forwarding agent" regarding cargo being shipped from Active Zones to AZA LTD. Rather, the unrefuted affidavit testimony establishes "it was understood by SDV and Active Zones that the

December 22, 2003 Terms and Conditions of Service to the Customs Power of Attorney applied to the freight forwarding services provided to Active Zones by SDV in February 2004."

It is noted that Active Zones, on one occasion, *argued* it was unaware of the Terms and Conditions of Service that were incorporated into the Power of Attorney. [Doc. 32, pp. 1-2]. However, Active Zones has presented *no evidence*, by way of affidavit or otherwise, to meet SDV's evidence the Terms and Conditions of Service were included and received by Active Zones, and to support its arguments that it was unaware of the Terms and Conditions. On the other hand, SDV has created a prima facie argument as to this point and supports its arguments with the affidavits of Gail Williams, SDV's "Quality/Operations Manager," and Eric Steinbock, SDV's Vice President. The affidavit testimony of Ms. Williams and Mr. Steinbock, as noted above, is uncontroverted. As SDV has presented credible evidence on this point and thus carried its burden, Active Zones must meet this evidence with evidence of its own in order to create a *genuine* issue of material fact. Active Zones has failed to do so. Accordingly, this Court finds, based on the evidence submitted by the parties, that Active Zones received and agreed to the Terms and Conditions of Service as incorporated into the Power of Attorney when it executed the Power of Attorney by signing same on December 22, 2003. Active Zones has submitted no evidence it did not understand or not agree to the December 22, 2003 Terms and Conditions of Service as incorporated into the Power of Attorney nor any evidence or credible argument that the Power of Attorney did not apply to the freight forwarding services provided to Active Zones by SDV in February 2004. Accordingly, this Court finds that the December 22, 2003 Power of Attorney, which incorporates the Terms and Conditions of Service apply to the service provided in February of 2004.

Therefore, based on a review of all submissions by Active Zones and SDV, this Court finds the relevant agreement between Active Zones and SDV is the December 22, 2003 Power of Attorney, which incorporates the Terms and Conditions of Service which contains the language argued to be a "forum selection clause."

As noted above, pursuant to Rule 60(b)(6), this Court finds unusual and extraordinary circumstances, namely obfuscated issues and a convoluted history due in large part to Hurricanes Katrina and Rita, which destroyed the home and offices of Active Zones's counsel who was forced to quickly and permanently relocate from New Orleans, Louisiana, to Baton Rouge, Louisiana to allow the motion for reconsideration to go forward.   In addition, as discussed more thoroughly herein, this Court has now been presented with sufficient clarification as to the relevant agreement between Active Zones and SDV, and the Terms and Conditions of Service of that agreement so that this Court can now properly address the issue of venue.  Thus, this Court finds sufficient reasons to depart from its prior ruling denying SDV's Motion to Dismiss or Alternatively to Transfer Action, and, to render substantial justice, this Court would allow SDV's Motion for Reconsideration to the extent SDV apparently seeks relief from judgment, order, or proceeding under Rule 60(b)(6).  As discussed more thoroughly below, a review of all arguments and evidence presented supports a conclusion venue is proper in the United States District Court in the Southern District of Texas. Thus, this Court **GRANTS IN PART** and **DENIES IN PART** SDV's Motion for Reconsideration for the reasons noted below.[7]

---

[7] As this Court has made no finding as to the intent of the parties as to the argued ambiguous "Forum Selection Clause," this Court's Ruling is limited only to a determination pursuant to 21 U.S.C. § 1404(a) and not the noted contractual provisions.

**2.    "Forum Selection Clause"**

SDV argues this matter must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(3). Specifically, SDV argues Active Zones and SDV entered into a "mandatory forum selection clause" whereby "the parties had agreed in advance that any actions relating to the performance of SDV's obligations should be filed in New York." For the following reasons, this Court finds SDV's arguments based on an alleged "mandatory forum selection clause" are not persuasive.

There is no dispute Active Zones and SDV are the only parties in this matter. Further, as discussed above, Active Zones and SDV entered the December 22, 2003 Power of Attorney incorporating a document identified as "National Customs Brokers & Forwarders Association of America, Inc., Terms and Conditions of Service" containing the relevant terms and conditions governing the "business dealings between the parties," which included the February 9, 2004 shipment from Active Zones to AZA, LTD. There is no dispute SDV was the "forwarding agent" on behalf of Active Zones.

Upon a review of the Terms and Conditions of Service, which are incorporated into the Power of Attorney, this Court notes there is no true "forum selection clause" as argued by the parties. Rather, Section 21 of the Terms and Conditions of Service provides:

> **21.  Governing Law; Consent to Jurisdiction and Venue.**  These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of New York without giving consideration to principals of conflict of law. Customer and Company
>
> (a)    Irrevocably consent to the jurisdiction of the United States District Court and the State courts of New York;
> (b)    agree that any action relating to the services performed by the Company, shall only be brought in said courts;
> (c)    consent to the exercise of *in personam* jurisdiction by said courts over it, [sic] and

(d)  further agree that any action to enforce a judgment may be instituted in any jurisdiction.

Section 21, by its title, "**Governing Law; Consent to Jurisdiction and Venue**," purports to establish three things, namely the parties' choice of "governing law," the parties' "consent to personal jurisdiction," and the parties' selection of "venue." These three aspects of Section 21 are considered as follows.

### A.  The Parties' Choice of Governing Law

With respect to the parties' choice of governing law, Section 21 clearly indicates, "These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of New York without giving consideration to principals of conflict of law." Thus, based on the clear and unambiguous language of Section 21 with respect to the choice of law provision, Active Zones and SDV agreed the Terms and Conditions of Service, namely those which are incorporated into the December 22, 2003 Power of Attorney, and the "relationship" of Active Zones and SDV "*shall* be construed according to the "laws of the State of New York." Moreover, the unequivocal expression of the parties' intent is the Terms and Conditions of Service are to be construed according to the laws of the State of New York "without giving consideration to principals of conflict of law," and thus, reinforces the conclusion the choice of law is to be exclusive. Thus, Active Zones and SDV agreed the Terms and Conditions of Service and the relationship created between them by this Power of Attorney (*including the interpretation of those provisions*) shall be construed *only* according to the laws of the State of New York.

Active Zones and SDV have not presented the Court with specific briefing on the issue of choice of governing law under Section 21 of the Terms and Conditions of Service beyond noting the language of the contract selecting New York law. However, each cites and argues case law grounded

-22-

within the general common law and neither address New York law to the extent it might differ from that general common law cited by the parties, therefore this Court will assume, for these purposes only, both parties agree the interpretation of the alleged forum selection clause in Section 21 of the Terms and Conditions of Service may be decided under the jurisprudence on which SDV and Active Zones rely, which comports with Federal common law.  This Court will assume therefore, there are no instances where New York law would differ from the general common law argued by the parties.

### B.  The Parties' Consent to Jurisdiction

As to the parties' "consent to jurisdiction," Section 21 (a) indicates Active Zones and SDV "[i]rrevocably consent to the *jurisdiction* of *the United States District Court* and *the State courts of New York,*" which clearly expresses the intent by Active Zones and SDV to consent to "jurisdiction," of certain courts.[8]  Also, pursuant to Section 21(c) of the Terms and Conditions of Service, Active Zones and SDV consent to "the exercise of *in personam* jurisdiction by said courts," which unequivocally indicates Active Zones and SDV consent to the exercise of personal jurisdiction over Active Zones and SDV by the identified courts.  Thus, based on the clear and unambiguous expressions with respect to "jurisdiction," this Court finds Active Zones and SDV consented to the exercise of personal jurisdiction by the identified courts.

However, while it is clear Active Zones and SDV consented to the exercise of personal jurisdiction by certain identified courts, the language of Section 21 is not as immediately clear as to *which* courts' jurisdiction is agreed. Specifically, Active Zones and SDV irrevocably consent to the

---

[8] To the extent suggested, the issue of whether Active Zones and SDV can, in fact, prospectively consent to *subject matter* jurisdiction is troubling, however that issue is not specifically argued by the parties nor relevant to this Court's findings.  The clear expression that Active Zones and SDV "[i]rrevocably consent to the *jurisdiction*" of the identified courts will be read as the intent by Active Zones and SDV to be subject to the exercise of *personal* jurisdiction to the extent allowed by law by the identified courts.

exercise of jurisdiction "of *the United States District Court*" and "the *State courts of New York.*"
SDV argues the quoted language intends "the parties had agreed in advance that any actions relating
to the performance of SDV's obligations should be filed in New York." SDV's argument, however,
is made within the context of "venue," not jurisdiction. Jurisdiction and venue are not synonymous;
however, as will become clear below, the two separate issues of jurisdiction and venue become
intertwined by operation of the particular contract at issue. As to which courts are agreed to, SDV
implicitly argues the phrase "of New York" in Section 21(a) modifies the term, "the United States
District Court," as well as the term, "the State courts," in order to reach its conclusion that
jurisdiction in the United States District Court is only proper in the "United States District Court of
*New York*" (emphasis added) and in the "state courts of New York." However, this Court notes from
Active Zones' argument, the noted language clearly, is subject to conflicting interpretation. The
language could equally be read to mean personal jurisdiction is agreed to in *any* United States
District Court, *and* the State courts of New York. The omission of the plural usage as to Courts,
clouds the matter further particularly as the reference to *the* United States District Court can infer
the plural even as to the United States District Courts of New York, of which there are many.

　　　This Court notes the matter of *Dixon v. TSE Intern. Inc.* 330 F.3d 396, 397-98 (5th Cir. 2003)
wherein the Fifth Circuit considered a contractual provision that "Courts of Texas, U.S.A., shall have
jurisdiction over all controversies. The Fifth Circuit reasoned, "Federal courts indisputably proceed
from, and find their origin in, the federal government, though located in particular geographic
regions." *Id.* Accordingly, the Fifth Circuit affirmed a District Court's determination that "the
federal courts of the Eastern District of Texas are not courts of Texas because they do not belong to
Texas, but rather are courts of the United States." *Id.* The Fifth Circuit explained, "Federal district

courts may be in Texas, but they are not of Texas." *Id.* Thus, it would seem SDV's argument fades; however, the parties have not briefed this particular issue and as personal jurisdiction does not control the issue now before the Court, this Court need not make a finding as a matter of law at this time.[9]

This Court also notes in *City of New Orleans,* 376 F.3d at 504, the Court noted, "A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another; [f]or a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." Hence, without knowing to which courts the parties intended to consent to the exercise of jurisdiction, this Court, also, cannot know whether that consent was intended to be exclusive.

### C.  The Parties' Selection of Venue

With respect to the issues focused upon by the parties, the parties' purported "consent to venue," Section 21(b) of the Terms and Conditions of Service provides Active Zones and SDV "agree that any action relating to the services performed by [SDV], shall *only be brought in 'said courts.'*" The term "said courts" purports to refer to the courts designated in the purported "consent to jurisdiction," clause namely, "the United States District Court and the State courts of New York," found in Section 21(a) which this Court for the reasons noted above has found to be ambiguous. Thus, this Court cannot declare, *pursuant to the contract*, the venue selected is improper. Further, there is no language in Section 21 of the Terms and Conditions of Service which suggests the venue

---

[9] The parties have not requested an evidentiary hearing to determine the parties' intent as to their consent to jurisdiction in this matter. Rather, this Court has only been presented with conflicting argument as to the concept of venue.

is exclusive, i.e. that federal courts of the United States or the state courts of New York are precluded from transferring actions to other venues after the actions have been "brought" in federal courts of the United States or in the state courts of New York.[10]

Active Zones unquestionably has brought "an action" against SDV relating to SDV's performance as a shipping agent on behalf of Active Zones pursuant to the December 22, 2003 Power of Attorney.  Specifically, Active Zones has alleged SDV was "solely responsible for providing an accurate description of the consignment in the bill of lading to be presented to the clearing authorities at the intended destination," but SDV "failed to perform its duties" by shipping the cargo with "the wrong cargo description on the Bill of Lading."  Thus, the action brought by Active Zones relates to the "services performed" by SDV, and clearly falls within the actions contemplated in Sections 21(b) and 21(a) of the Terms and Conditions of Service of the Power of Attorney. However, those sections contain a pivotal ambiguity which precludes the relief requested, i.e., dismissal based upon a finding of an exclusive selection of venue.

In consideration of the language in Section 21 (b) and 21 (a), which this Court finds to be ambiguous at best, this Court finds SDV's request that this Court dismiss this matter pursuant to Fed. R. Civ. Pro. 12(b)(3) based on the "mandatory forum selection clause" in which "the parties agreed in advance that any actions relating to the performance of SDV's obligations should be filed in New York" lacks sufficient support and is hereby **DENIED**.  However, for the reasons that follow, this

---

[10] This Court also notes, Active Zones and SDV agreed in Section 21(d) that "any action *to enforce a judgment*" *may* be instituted in "any jurisdiction," without limitation, which is arguably a much broader grant. Although there is no "judgment" being enforced in this matter; it is of interest Active Zones and SDV expressed their intent for certain actions, namely actions to enforce a judgment, to be brought in *any* jurisdiction, while actions relating to the services performed by SDV *shall only be brought* in "the United States District Court and the State courts of New York."

Court finds this matter should be transferred to the Houston Division of the United States District Court for the Southern District of Texas, pursuant to 21 U.S.C. § 1404(a).

**3.      Transfer of Venue Pursuant to 21 U.S.C. § 1404(a)**

SDV argues in the alternative that this Court should transfer this action to the Houston Division of the United States District Court for the Southern District of Texas for the convenience of the parties and witnesses or in the interest of justice, pursuant to 21 U.S.C. § 1404(a).  In applying the provisions of § 1404(a), the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.  The claim before this Court could have been filed in the Houston Division of the Southern District of Texas as jurisdiction would have been supportable as to each claim on the basis of diversity of citizenship.

To support its argument pursuant to 21 U.S.C. § 1404(a) SDV argues the shipment at issue left the Port of Houston and the SDV office which handled the shipment was "SDV's Houston office." Likewise, SDV argues "the witnesses with the most knowledge regarding this shipment are located in SDV's Houston office thereby making Houston more convenient for the majority of witnesses." SDV supports its arguments with the affidavit of Mr. Steinbock, SDV's Vice President, who indicates, "the cargo at issue in this case was shipped from the Port of Houston, Texas," and that "the office that handled the shipment that is the subject of this lawsuit was the Houston office." Further, Mr. Steinbock states, "The relevant witnesses with knowledge of, and the documentation regarding the shipment at issue, are located at SDV's Houston office." Active Zones submitted no evidence to controvert SDV's Affidavits.

Active Zones however, argues it is not convenient for Active Zones to litigate this matter in

-27-

Texas because litigation in Texas will create a financial hardship on Active Zones, which is a Louisiana domiciliary, and because Active Zones's "attorney's offices are located in Baton Rouge, Louisiana, [and] the files pertaining to the work he did on the project in question are located there." Active Zones otherwise provides this Court with no authority or evidence indicating that the litigation of this matter in Louisiana is more convenient for the parties, witnesses and in the interest of justice.

Based on a consideration of the private and public interest factors, none of which are given dispositive weight, this Court finds SDV has carried its burden of proof in its motion to transfer venue pursuant to 21 U.S.C. § 1404(a).  With respect to the private concerns related to a determination of "convenience," this Court notes much of the thrust of this dispute centers on events occurring in Cameroon, Africa; however, it is apparent to this Court that the substantial majority of the activity arising within the United States occurred in Houston.  Notably, the uncontroverted affidavit testimony of Mr. Steinbock establishes: (1) the cargo at issue in this case was shipped from the Port of Houston, Texas; (2) "the office that handled the shipment that is the subject of this lawsuit was SDV's Houston office; and (3) the relevant witnesses with knowledge of, and the documentation regarding the shipment at issue, are located at SDV's Houston office.[11]

This Court notes Active Zones's choice of forum is the Western District of Louisiana, and this Court is certainly sympathetic to Active Zones's choice; however, this Court has been presented with persuasive argument fully supported by evidence to find venue to be more convenient in Houston, Texas and no evidence and insufficient argument that the suit should remain in Lafayette,

---

[11] The affidavits of Ms. Williams, who is SDV's Quality/Compliance Manager, and Mr. Steinbock, SDV's Vice President, were executed in Houston, Texas, suggesting these witnesses are in fact, also, located or accessible in Texas.

Louisiana.  Although Active Zones avers it will sustain greater financial hardship with respect to Texas litigation due primarily to the location of its attorney, the same argument would stand for SDV.  Lafayette, Louisiana is substantially less than 400 miles from Houston, Texas, where it appears the witnesses relevant business records exist.[12]   There is otherwise insufficient argument or evidence establishing that the cost of attendance for willing witnesses is substantially greater in Houston, Texas than it is in Lafayette, Louisiana.  Rather, as noted above, it would seem the cost of attendance for willing witnesses would be greater in Lafayette insofar as the majority of the witnesses are located in Houston.  Active Zones has argued its counsel is located in Baton Rouge, Louisiana, where his files are located; however the Fifth Circuit has repeatedly held the convenience of counsel is *not* a factor to be assessed in determining whether to transfer a case under § 1404(a).  *See In re Volkswagen AG,* 337 F.3d at 206; *In re Horseshoe,* 337 F.3d at 434.  Therefore, based on a review of the arguments and evidence submitted by Active Zones and SDV, this Court finds the relative ease of access to sources of proof is greater for Houston witnesses with respect to activities undertaken in the United States.[13]

Notably, there is no argument nor any evidence before this Court establishing that venue in the Houston Division of the Southern District of Texas impedes the availability of compulsory process to secure the attendance of witnesses in this matter.  This Court finds this factor to be neutral

---

[12]  *See, e.g., In re Volkswagon of America Inc[Volkswagon I], supra,* in which 400 miles warranted transfer);  *In re Volkswagon of America Inc[Volkswagon II]* 2007 WL 504942 (5th Cir. 2007) (unpub.) (the Fifth Circuit denied a motion seeking a writ of mandamus based on the contention that a district court abused its discretion in denying a motion to transfer venue from the Marshall Division of the Eastern District of Texas to the Dallas Division of the Northern District of Texas, noting "the approximately 400 miles that the parties and witnesses in [*Volkswagen I*] would have had to travel to reach the plaintiffs' chosen venue is far greater than the roughly 150 miles involved here").

[13]  To the extent sources of proof are found in Cameroon, Africa, this Court would find no difference between venue in Texas or Louisiana with respect to the ease of access to such information.

with respect to litigation in Louisiana or Texas.  Lastly, based on the uncontroverted affidavit testimony of Mr. Steinbock, this Court finds the practical problems that make trial of this case easy, expeditious and inexpensive warrant transfer of venue to the Houston Division of the United States District Court for the Southern District of Texas.  Accordingly, in consideration of the private concerns related to the change of venue pursuant to 21 U.S.C. § 1404(a), this Court find SDV has carried its burden of proof in establishing this matter should be transferred to Houston, Texas.

With respect to the public concerns related to a determination of "convenience," this Court has been presented with no argument nor any evidence establishing any differences of administrative difficulties flowing from court congestion with respect to the Southern District of Texas and the Western District of Louisiana. This Court finds this particular public consideration is the same or neutral in either the Southern District of Texas and in the Western District of Louisiana.  The familiarity of the forum with the law that will govern the case is the same or neutral with respect to litigation in either the Southern District of Texas or the Western District of Louisiana insofar as the contract on its face indicates the parties agree this matter is governed by New York substantive law.

Lastly, the avoidance of unnecessary problems of conflict of laws of the application of foreign law is not at issue insofar as the contract on its face indicates Active Zones and SDV have agreed that the Terms and Conditions of Service and the relationship of Active Zones and SDV "shall be construed according to the laws of the State of New York without giving consideration to principals of conflict of law."  Thus, this Court finds the public consideration of unnecessary problems of conflict of laws is the same or neutral with respect to litigation in the Southern District of Texas and in the Western District of Louisiana.  Accordingly, in consideration of the public concerns related to the change of venue, this Court finds SDV has carried its burden of proof in

-30-

establishing this matter should be transferred to the Houston Division of the United States District Court for the Southern District of Texas.

In view of the foregoing, this Court finds SDV has carried its burden in establishing venue is more convenient in the Houston Division of the United States District Court for the Southern District of Texas than in the Western District of Louisiana. Accordingly, SDV's Motion to Transfer Venue is hereby **GRANTED**, and this matter is hereby transferred to the Houston Division of the United States District Court for the Southern District of Texas.[14]

## CONCLUSION

In consideration of the foregoing,  The Motion for Reconsideration [**Doc. 48**], filed by SDV is hereby **GRANTED**.  The Motion to Dismiss [**Doc. 11**], filed by SDV is hereby **DENIED**.  The Motion to Transfer Venue [**Doc. 11**], filed by SDV is hereby **GRANTED**, and this matter is hereby **TRANSFERRED** to the Houston Division of the United States District Court for the Southern District of Texas.  The Motion to Strike Exhibit [**Doc. 47**], filed by SDV, is **DENIED as MOOT**.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ⟨⟨⟨⟨ day of August, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[14] See footnote 7.